## JELIN v. HOME INS. CO.

District Court, D. New Jersey.

Jan. 16, 1934.

Andrew Van Blarcom, of Newark, N. J., and Paul W. Ewing, of New Brunswick, N. J., for plaintiff.

Arthur T. Vanderbilt, of Newark, N. J., for defendant.

CLARK, District Judge.

The present motion is to set aside a verdict for a fire loss on insured premises. By concession its decision depends upon the construction of clauses in the policy and its modifying rider. The policy clause is the usual "vacant and unoccupied" provision. It reads: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

The rider, contained in an indorsement transferring ownership, is in these terms:

"Permission is hereby granted: * * * To remain vacant during any changes of tenants, or while awaiting a tenant, not exceeding sixty consecutive days at any one time and unoccupied for not exceeding eight consecutive months in any one year."

This court is not fully instructed in the actuarial principles which govern (or should govern) insurance against fire. It has the impression that the state of the art in the fire insurance field has not reached the life insurance stage of development. The fire insurance companies have apparently concluded that risk is increased unless an insured dwelling house is of interest to some

human beings. Republic County Mut. Fire Ins. Co. v. Johnson, 69 Kan. 146, 76 P. 419, 421, 105 Am. St. Rep. 157, 2 Ann. Cas. 20; Ohio Farmers' Ins. Co. v. Vogel (Ind. App.) 75 N. E. 849.

Both the acquisitive and the self-preserving instincts are incentives to precaution. One relates to our regard for our lares and penates and the other to human life, and hence to habitation by human beings. The accurate description of two different instincts requires naturally two different words. The plaintiff's contention of synonymous construction would defeat such requirement.

"Vacant" comes from the Latin, vacare. This latter is the root word, denoting emptiness. From it derives, for instance, vacate, vacation, vacuum, etc. Such emptiness is all-embracing, and must, of course, include all matter, whether animate or inanimate. In that sense, a vacant house is one empty of human beings.

"Occupy" (and therefore unoccupied), on the other hand, has a more limited and special meaning. It, too, derives from the Latin, namely, from ob, to, plus capere, take. Its source words denote action, and action is possible only for the physiologically animate. The word is used, then, to connote the biological filling of space. Thus: "The commanders descended upon Rhode Island and occupied it without resistance." Lecky, History of England in the 18th Century, c. 14.

We quote just one sentence to show the contrasting use: "Scores of houses were suddenly vacated, lest they should bury their occupants." Arnold Bennett's Riceman Steps, 1.3.

The courts are in agreement with the lexicographers, and give to "vacant" the more general meaning of which it alone is capable and to "unoccupied" its narrower significance of human activity. Any other interpretation would, of course, convict the draftsman of this standard fire insurance clause of tautology. Knowlton v. Patrons' Androscoggin Fire Ins. Co., 100 Me. 481, 62 A. 289, 291, 2 L. R. A. (N. S.) 517; Johnson v. Inland Empire Farmers' Mut. Fire Ins. Co., 155 Wash. 6, 283 P. 177; Schoeneman v. Hartford Fire Ins. Co. of Hartford, Conn., 125 Or. 571, 267 P. 815; Parmeter v. Williamsburgh City Fire Ins. Co., 48 N. D. 530, 185 N. W. 810, 811; Southern Nat. Ins. Co. v. Cobb (Tex. Civ. App.) 180 S. W. 155, 156. Other cases can be found in Words and Phrases, in the brief of learned counsel, and no doubt in other places.

It is unnecessary to spend much time on plaintiff's quite unsound attempt to construe the rider as a double rather than an alternative condition. To maintain this interpretation, it is necessary to ignore the nature and purpose of the rider and to treat it as if it stood alone as a conditional clause in the simple disjunctive form. The rider enlarges that disjunctive condition by granting certain increases of time. The conjunctive is, therefore, the only grammatical method of expressing a dual modification, and is not an attempt to set up a different (because double) condition.

There was one broken bedstead in the garret of the destroyed house. There was some suggestion that this unit of furniture takes the house out of the vacant class. Both the cases and common sense refute such a thought. The acquisitive instinct already referred to is the normal and not the miserly one, and obviously, therefore, has a de minimis limitation. Broken bedsteads are below this minimum.

The verdict will be set aside.